ShackeleoRD, J.,
delivered the opinion of the Court.
This is an action of trespass, brought by the defendants in error, minors, by their next friend, Madden, against the plaintiff in error, in the Circuit Court of Smith. The facts necessary to be stated, are: The ancestor of the defendants in error, in 1854, purchased a tract of land, which joined the lands of the ancestor of the plaintiff in error. It was agreed between the original owners, that the lane that ran between the fields of the parties, should he closed. The lane was upon the lands of Stallcup, and the fence of Bradly was on his line. By agreement, one-half of the fence on the Bradly side was removed, also one-half of the fence of Stallcup, so. as to leave each one fence, joining the two fences at the centre and at each end.
It was agreed that this should be a partition fence. To effect a junction, it was necessary to throw about twelve feet at one end, upon the lands of Stallcup. This agreement was continued during the lives of Bradly and Stallcup.
In 1859, Bradly died, leaving ■ a last will and testament, by which he devised his lands to his wife, for *408 life, or widowhood, and then to the defendants in error. If she was dissatisfied, the executor was authorized to sell the lands. Madden was appointed the executor.
The wife died in the year 1860; Madden rented the lands; Stallcup cut loose the division fence, hut finally agreed to let the tenants join. He huilt a new fence on his line in 1862. He cut loose again, and would not agree to let the tenants join, unless they would pay him forty dollars, the one-half in value of a new fence. He again consented, in 1862, to let them join his fence. In 1863, the lands were again rented out hy Madden. The plaintiff in error withdrew the fence. Madden refused to pay the forty dollars, insisting that he had no power, as he was merely acting as next' friend of the defendants in error, in renting the lands, and if he was to pay it, the court would not allow it to him, as it was too much.
There was a valuable young orchard on the place.' In consequence of his throwing down the connecting line, the stock entered and destroyed the orchard that was growing upon the lands of the defendants in error. The lands could not. he rented nor cultivated, in consequence of Stallcup refusing to let defendants in error join.
The Court, in substance, charged the jury, that if the defendant’s father, then owning the land, now owned hy the defendant, Stallcup, hy consent, joined fences with Bradly in his lifetime, and afterwards the defendant, coming into possession, broke loose the fence, and again, afterwards, consented that the Bradly’s fence *409 might he joined to his, that he had no right, after the death of Bradly and his widow, if she had a life estate in the lands, in either instance, to thus disconnect the fences, and .leave the Bradly farm exposed, without first giving legal notice to some one legally authorized to represent the plaintiffs, in reference to their interest in the lands. Madden would not be such person, by reason of his being the executor of the Will of Bradley. If, by the Will, the lands were to he sold for division among the plaintiffs, and no special direction given as to who shall sell it; that, though the power of the executor to sell might be implied, for a division, he would have no power to make any other disposition of it, and he would not he authorized to make any agreement binding on the plaintiffs; and notice to him of an intention to disconnect the fences, would not he sufficient. And this would he so, even though the fences remained joined after Bradly’s death. By agreement with Madden, they were again joined after the death of Bradly, after they had been broken; that the defendants were not liable for any damages that may have resulted from the bad condition of the fences at other points; that the plaintiffs were only entitled to recover such damages as were the natural and proximate consequence of the trespass shown to have been committed by the defendant.
A judgment was rendered against the defendant for $150. A new trial was moved for; which was overruled, and an appeal taken to this Court.
It is now insisted for the defendant, that the Court erred in the instructions to the jury; that this is not *410 a partition fence, as recognized by the Statutes. Sec. 1891 of tbe Code, defines partition fences, within the meaning of the chapter, to be, fences erected on the line between lands owned by different persons. But no owner of land is compelled to allow his neighbor to join his fence, exclusively on his own land. By the agreement made between Bradly, the ancestor of the defendant in error, and Thomas Stallcup, the ancestor of the plaintiff in error, in 1854, and which was continued and carried out during the lives of the ancestors of the parties on both sides, this fence became a partition fence, and the parties were subject to be controlled and governed by the law regulating partition fences.
Section 1698 of the Code, provides: “Partition fences ■ are to be repaired at the joint expense of the occupants. If any person make a partition fence by joining, or using it as such, he shall pay the person erecting it, his proportion of the expense.”
Section 1688 of the Code, provides: “If the parties cannot agree, on application by either, to the Justice of the district, he shall issue his order to three disinterested freeholders, who shall examine the fence, and ascertain the amount to be paid to the owners erecting it.”
Section 1689 of the Code, provides: “That the freeholders, upon giving notice to both parties, shall examine the fence and report the amount in writing, to be paid to the person erecting it, and if the money is not paid in ten days, the Justice shall render up a judgment for the amount.”
*411 Section 1690 of the Code, provides for like proceedings, and the fences are repaired or rebuilt by either of the joint proprietors; the jury of review being judges of the necessity or advisability of the improvement.
The death of Bradly and Stallcup, the original owners of the land, did not annul the oiginal contract or agreement, to make this a partition fence; and the subsequent recognition by the plaintiff in error, after he came in possession of the lands, by permitting the defendants in error to join, would bring it within the provisions of the law regulating partition fences, and the plaintiffs in error would have no right to disconnect or remove the fence, without giving the defendants in error, reasonable notice. It is insisted, that the executor, Madden, had such an interest in the lands, as would authorize him to rent out the lands of the defendants in error, and therefore, notice to him was sufficient. By the provisions of the Will, he was empowered to sell only in the event the wife of the téstator did not desire to remain on the lands; she having died, his power to sell ceased, and an absolute estate vested in the defendants in error.
The plaintiffs in error having, by their agreement, or those under whom they claimed, recognized this fence as a partition fence, were entitled, under the provisions of the section of the Code 1690, to recover the one-half of the value of rebuilding or repairing the fences; or if they desired that there should be no longer any connection, it was their duty to give to the plaintiffs, or their guardian, reasonable notice of his intention to do so: Head, 156. He had the right, under the *412 provisions of the Code referred to, to have the damages assessed in rebuilding the partition fence; or, if he desired that it should no longer remain such, to give reasonable notice of his intention to remove the fence. Having failed to do so, he is responsible for the immediate consequences growing out of his act.
It is insisted, that that part of His Honor’s charge, in which he instructed the jury that they would find only such damages as were the natural and proximate consequences of the trespass committed by the defendant, is not sufficiently specific as to the extent of the damages in such cases, nor as to the duties of the defendant in error in remedying the injury, if any was done; that the actual damage was very slight, and could have been easily remedied; and that the plaintiff in error is responsible for only nominal damages. The declaration avers that, by reason of the trespass, the orchard of the defendant in error was damaged. It is a settled principle, that damages, to be recovered, must always be the natural and proximate consequence of the act complained of: 2 Greenleaf, sec. 256. The same author, vol. 2, sec. 224, says: “Where damages through the natural consequences of the act complained of, are not the necessary results of it, they are termed special damages, which the law does not imply; and therefore, in order to prevent a surprise upon the defendant, they must be particularly specified in the declaration, or the plaintiff will not be permitted to give evidence on them on the trial; but where the special damages, properly alleged, are *413 the natural consequence of the wrongful act, the jury may infer it from the wrongful act.” ■
If the injury complained of was of that character, the party could have, by ordinary diligence, prevented the injury resulting from the trespass, he will not be entitled to recover more than the actual damage resulting from the trespass. In the case cited, if a man enters his neighbor’s field unlawfully, and leaves the gate open, if, before the owners know it, the cattle enter and destroy the crops, the trespasser is responsible; but if the owner sees the gate open and passes it frequently, and wilfully, through gross negligence, leaves it open, and the cattle get in and destroy his crop, he will not be entitled to recover for the same. In all cases of trespass, the jury are the proper judges of the damage.
The question in this case was properly submitted to them under the charge of the Court, in which we think there was no error; and there being proof to sustain the verdict, according to the well-settled principles of this Court, it will not be' disturbed.
The judgment will be affirmed.